**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nancy K. Duckett,<br><br>          Plaintiff,<br><br>v.<br><br>Dennis M. Enomoto, et al.,<br><br>          Defendants. | No. CV-14-01771-PHX-NVW<br><br>**ORDER** |

     Plaintiff, the personal representative of an estate, brings this interpleader action to require Defendants to settle among themselves their rights to certain funds currently held by Plaintiff and designated to a testamentary trust.

     Before the Court are Defendants' competing summary judgment motions. The United States' Motion for Summary Judgment (Doc. 48) contends the interpleaded funds are subject to federal tax liens. The Trustee and Trust Beneficiary's Cross-Motion for Summary Judgment (Doc. 58) contends the liens do not attach.

     Also before the Court is Plaintiff's Motion for Discharge (Doc. 65), which seeks to recover costs and attorney's fees incurred in bringing this action, to deposit the interpleaded funds with the Court, and to discharge Plaintiff from this action free of liability to Defendants.

     Also before the Court is the Trustee's Motion to Allow Payment of Trust Legal Fees from Interpleader Funds (Doc. 51).

For the reasons that follow, Defendants' competing summary judgment motions (Docs. 48, 58) and the Trustee's motion for fees (Doc. 51) will be denied without prejudice to renewal. Plaintiff's Motion for Discharge (Doc. 65) will be granted in part and denied in part.

## I. BACKGROUND

The parties have stipulated to the following facts only for purposes of the pending motions for summary judgment. (Doc. 49 at 2.)

On August 9, 2004, Miyoko Enomoto ("Ms. Enomoto") executed a Last Will and Testament ("Will") naming Nancy Duckett as the personal representative of her estate. (Doc. 49-1 at 8-11.) The Will divided certain of Ms. Enomoto's personal property and the residue of her estate into three shares, to be devised to her three children: Duckett, Dr. Dennis Enomoto ("Dr. Enomoto"), and Joanne Bradley. (*Id.* at 8-9.) The Will called for Dr. Enomoto, but not Duckett or Bradley, to receive his share via trust:

> The One-Third share of my Estate, other than tangible personal property, that is to be distributed to my son DENNIS MASAKI ENOMOTO, if such amount should exceed $50,000, shall be distributed in trust. The Trustee shall pay to DENNIS MASAKI ENOMOTO so much or all of the net income and principal of the trust as in the sole discretion of the Trustee may be required for support in the beneficiary's accustomed manner of living, for medical, dental, hospital, and nursing expenses, or for reasonable expenses of education, including study at college and graduate levels. Any income not so paid shall be accumulated and added to the principal of such trust at the end of the trust's tax year. In the Trustee's sole discretion and to the extent the Trustee deems advisable, the Trustee may consider or disregard the funds available to the beneficiary from other sources or the duty of anyone to support the beneficiary. Should the principal of the trust drop below $10,000, the Trustee shall distribute the balance of the principal, together with the undistributed income therefrom to DENNIS MASAKI ENOMOTO.

(*Id.* at 9.) Under the terms of the Will, Carol Severyn Trust Management Services was named as trustee, but Dr. Enomoto enjoyed "the limited authority to request the removal

of the Trustee and appoint a successor Trustee," who would have to be "an individual licensed by the Supreme Court of the State of Arizona as a Private Fiduciary, or an entity whose employee(s) responsible for managing the trust are licensed by the Supreme Court of the State of Arizona as Private Fiduciaries." (*Id.* at 10.) The Will prohibited Dr. Enomoto from naming a family member as successor trustee. (*Id.*)

Ms. Enomoto passed away on February 16, 2013, and Duckett filed a probate petition in Maricopa County Superior Court on March 15, 2013. (Doc. 49 at 5.) On April 3, 2014, Duckett prepared a final accounting of the estate, to which both Dr. Enomoto and Bradley agreed. (*Id.*) That accounting provided that the estate would deliver $173,545.12 to the trustee of the trust ("Trust") established for Dr. Enomoto's benefit and would pay out $282,138.10 each to Duckett and Bradley. (*Id.*) In addition, Duckett withheld $15,000 as a temporary reserve to cover future costs and fees of administration prior to closing the estate. (*Id.*)

On June 17, 2014, the Internal Revenue Service served on Duckett, in her capacity as personal representative, a Notice of Levy demanding that she "turn over to us [Dr. Enomoto's] property and rights to property (such as *money, credits, and bank deposits*) that you have or which you are already obligated to pay this person." (Doc. 49-2 at 27 (italics in original).) The notice, which Duckett received before distributing any money from the estate, related to a total of $701,079.11 in assessments the IRS had made against Dr. Enomoto for income tax years 2007 through 2011. (Doc. 49 at 4.) Despite receiving statutory notices and demands for payment, Dr. Enomoto had not timely paid the full amount allegedly due. (*Id.* at 4-5.) He subsequently made a number of partial payments, bringing his balance owing, as of May 18, 2015, to $499,761. (*Id.* at 5, 7.)

When Duckett informed Dr. Enomoto of the levy, he objected to paying the IRS the funds slated for delivery into the Trust. (*Id.* at 6.) Duckett subsequently filed a Petition for Interpleader in the Maricopa County Superior Court against Dr. Enomoto, the IRS, Carol A. Severyn, and Carol Severyn Trust Management Services. (Doc. 1-1 at 6;

Doc. 49 at 6.) On August 7, 2014, the IRS removed the action to this court pursuant to 28 U.S.C. § 1444. (Doc. 1 at 1-2.)

On September 18, 2014, Dr. Enomoto named Kurt A. Tittelbach as the Trust's successor trustee, and Tittelbach accepted the appointment four days later. (Doc. 49 at 6-7; Doc. 49-2 at 35.) The Court thereafter dismissed Severyn and Carol Severyn Trust Management Services. (Doc. 22 at 2.)

The IRS now moves for summary judgment, arguing that as a matter of law, "the Interpleaded Funds should go [to] the United States, not to Dr. Enomoto or the trustee." (Doc. 48 at 2.) In their jointly filed response and cross-motion, Dr. Enomoto and Tittelbach contend the "IRS is not entitled to the Interpleaded Funds as a matter of law" and they seek summary judgment "precluding IRS attachment of this discretionary trust." (Doc. 58 at 2, 9.)

Duckett wants out of the fight. She moves for recovery of "costs and reasonable attorney's fees" incurred in bringing this action, as well as discharge from this action "with a finding of no liability to the Defendants upon deposit of funds with the Clerk of the Court." (Doc. 65 at 1-2.)

Finally, Tittelbach moves to recover from the interpleaded funds "the legal fees incurred in defending the Trust assets against the IRS claims." (Doc. 51 at 1.)

## II. ANALYSIS

### A. Defendants' Cross-Motions for Summary Judgment

A motion for summary judgment tests whether the opposing party has sufficient evidence to merit a trial. At its core is whether sufficient evidence exists from which a reasonable jury could find in favor of the party opposing the motion. Summary judgment should be granted if the evidence reveals no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). For purposes

of the pending motions, there are no disputed facts. This case therefore presents a pure question of law.

### 1. Property of the Taxpayer to Which a Lien Attaches

Defendants' dispute involves the reach of 26 U.S.C. § 6321, which provides, "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Defendants disagree over whether Dr. Enomoto's interest in the interpleaded funds can be considered "property" or "rights to property." If it can, the parties agree, the IRS has a lien on that interest by operation of law; if not, no lien yet exists.

"The question whether a state-law right constitutes 'property' or 'rights to property' is a matter of federal law." *Drye v. United States*, 528 U.S. 49, 58 (1999). Courts "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Id.*

In "determining whether a federal taxpayer's state-law rights constitute 'property' or 'rights to property,' 'the important consideration is the breadth of the control the [taxpayer] could exercise over the property.'" *Id.* at 61 (brackets in original). That is, courts examine the degree of control a taxpayer possesses under state law and then ask whether, as a matter of federal law, that degree of control rises to the level of "property" or a "right to property." There are few guideposts in this area. In general, however, "the taxpayer must have a beneficial interest in any property subject to the lien." *Id.* at 59 n.6. A "state-created incident of ownership," such as "bare legal title" to disputed property, is

"not a sufficient 'right to property' . . . to allow [a] tax lien to attach." *Id.* (citations omitted).

Applying this test, the Supreme Court has held that "a taxpayer's right under state law to withdraw the whole of the proceeds from a joint bank account constitutes 'property' or the 'right to property' subject to levy for unpaid federal taxes, although state law would not allow ordinary creditors similarly to deplete the account." *Id.* at 58 (citing *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 723-27 (1985)). Similarly, "a taxpayer's right under a life insurance policy to compel his insurer to pay him the cash surrender value qualifies as 'property' or a 'right to property' subject to attachment for unpaid federal taxes, although state law shielded the cash surrender value from creditors' liens." *Id.* (citing *United States v. Bess*, 357 U.S. 51, 56-57 (1958)). But where the taxpayer lacks authority to dispose of the disputed funds, there is no "property" or "right to property" within the meaning of § 6321. Accordingly, "as a matter of federal law, . . . no federal tax lien could attach" to the proceeds of a life insurance policy, since those proceeds were "unavailable to the insured in his lifetime." *Id.* at 58-59 (citing *Bess*, 357 U.S. at 55-56).

### 2. Dr. Enomoto's Interest in the Interpleaded Funds

When interpreting a trust governed by Arizona law, "the overriding goal is to ascertain the intent of the trustor." *Weinstein v. Weinstein*, 235 Ariz. 40, 44, 326 P.3d 307, 311 (Ct. App. 2014). "That intent is to be ascertained from the contents within the four corners of the instrument, including the general plan or scheme thereof, and when necessary or appropriate, the circumstances under which the [instrument] was made." *Id.* at 44-45, 326 P.3d at 311-12 (brackets in original) (internal quotation marks omitted).

The IRS' Notice of Levy instructs Duckett to hand over any of Dr. Enomoto's "property and rights to property . . . that [she] ha[s] or which [she is] already obligated to pay" to him. (Doc. 49-2 at 27.) But Arizona trust law recognizes no property interests of any kind that *Duckett* is obligated to pay to Dr. Enomoto. Nor does she have any

- 6 -

property interests belonging to Dr. Enomoto.  Ms. Enomoto's clear intent in establishing the Trust was to confer on her son the limited right to receive only those amounts that the Trustee, in his discretion, believed necessary for Dr. Enomoto's "accustomed manner of living," including medical and educational expenses.  It is the Trustee, not Duckett, who is obligated to make distributions to Dr. Enomoto.  Duckett's only obligation is to pay the Trustee the amount agreed to in the final accounting of the estate so that the trustee can subsequently disburse it at his discretion.  Were Duckett to pay the money directly to Dr. Enomoto—or to the IRS, standing in Dr. Enomoto's shoes—she would violate both the letter and spirit of the Will.  Under Arizona trust law, Dr. Enomoto's interests run only to the Trustee.

Because Dr. Enomoto's interests run only to the Trustee, the IRS has not shown that Dr. Enomoto has any state-law right or interest in payment from Duckett.  It follows that Dr. Enomoto does not currently have any state-law right or interest in the interpleaded funds because they are still in Duckett's hands.  Therefore those funds—though designated to the Trust—are not yet Dr. Enomoto's "property" for federal tax purposes.

The IRS' summary judgment motion does not fully appreciate the fact that the funds are not yet held in trust.  Instead, the IRS claims this case is "on point with *United States v. Delano*, 182 F. Supp. 2d 1020, 1023 (D. Colo. 2001)." (Doc. 48 at 11.)  But the issue in *Delano* was whether a testamentary trust beneficiary's interest in *the trust* constituted "property" for federal tax purposes.  182 F. Supp. 2d at 1021.  Here, the issue is whether a testamentary trust beneficiary's interest in *funds designated to the trust but held by the personal representative* constitutes "property" for federal tax purposes.  Whatever Dr. Enomoto's interest in the Trust, it does not extend to funds outside the Trust.

In supplemental briefing the IRS suggests it does not matter whether the funds are currently held in trust, since it is not "relevant to query whether the IRS could have or

- 7 -

should have waited to levy until the Personal Representative distributed the subject funds to the Trustee." (Doc. 77 at 3.) The IRS relies on *American Trust v. American Community Mut. Ins. Co.*, 142 F.3d 920 (6th Cir. 1998), where the court enforced an IRS lien on interpleaded funds that had been designated to a trust but were not yet held in trust. That case sheds no light on whether the funds held by Duckett are Dr. Enomoto's property.

For starters, *American Trust* addressed a different question: whether an exemption from levy prevented the IRS from enforcing an otherwise valid lien on certain funds. 142 F.3d at 922. That the lien attached to the funds was not in dispute. But that is precisely the question here: whether the interpleaded funds are currently subject to the IRS' lien at all.

Moreover, in *American Trust* there was reason to think the interpleaded funds were the taxpayer's property when in the hands of the person who petitioned for interpleader. There, the interpleaded funds were sales commissions earned by the taxpayer, and the person who petitioned for interpleader was the taxpayer's employer. *See id.* at 921-22. Thus the taxpayer had a right to the funds at the time of interpleader just as any employee has a right to earnings held by an employer. Here, however, the interpleaded funds are a prospective inheritance, and the person who petitioned for interpleader was Duckett, the personal representative of the estate. Dr. Enomoto has no right to the funds as against Duckett because the Will gives him no such right.

One might think the Trustee's right to compel Duckett to distribute the funds effectively confers a similar right to Dr. Enomoto. *American Trust* does not support that conclusion either. There, the taxpayer assigned *his own* rights in the funds to a trust created for his benefit and to evade taxes, *id.* at 921 & n.1, so the trustee's right to distribution seemed indistinguishable from the taxpayer's right. Here, by contrast, Ms. Enomoto designated her own money to a testamentary trust that expressly prohibited Dr.

- 8 -

Enomoto from appointing a family member as trustee. Thus, whatever right the Trustee has against Duckett does not confer such a right to Dr. Enomoto.

In sum, because Dr. Enomoto has no state-law right or interest in payment from Duckett, the interpleaded funds are not yet Dr. Enomoto's property and the IRS' lien does not attach. The IRS' summary judgment motion must be denied.

This conclusion is based on the unusual facts and procedural posture of this case, where the personal representative of an estate has petitioned for interpleader in response to an IRS levy seeking funds that are in her possession but have been designated to a trust whose beneficiary is the taxpayer. Multifaceted cases like this one require a careful accommodation of divergent legal principles and offer little predictive value for future cases with different facts. Accordingly, the Court does not address whether the funds would be Dr. Enomoto's property once distributed to the Trust. As a result, Dr. Enomoto and Tittelbach's cross-motion for summary judgment will also be denied as premature.

It is worth noting that the Court would be well equipped to decide whether the funds are Dr. Enomoto's property once in the Trust, because Defendants have thoroughly briefed this question in their summary judgment motions. (*See* Doc. 48 at 11-15; Doc. 58 at 4-9.) Therefore Defendants will be permitted to renew their summary judgment motions without a need for further briefing, once the funds are in the Trustee's hands.

### B. Plaintiff's Motion for Discharge

Duckett's motion seeks (1) reimbursement for costs and attorney's fees reasonably incurred in bringing this interpleader action, (2) deposit of the interpleaded funds with the Clerk of Court, and (3) discharge from this action free of liability to Defendants.

#### 1. Costs and Attorney's Fees

Duckett properly brought this interpleader action. Pursuant to Federal Rule of Civil Procedure 22(a)(1), "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." The Court has subject-matter jurisdiction because the IRS removed Duckett's state court action under 28

U.S.C. § 1444. *See Hood v. United States*, 256 F.2d 522, 525 (9th Cir. 1958) (interpreting 28 U.S.C. § 1444 as providing an independent basis for jurisdiction). Duckett's petition for interpleader was based on "a good faith belief that there are or may be colorable competing claims" to the funds at issue, *Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887, 894 (9th Cir. 2012), because the funds had been designated to a testamentary trust but were also the apparent subject of an IRS notice of levy.

The Court has discretion to award attorney's fees to a disinterested plaintiff for properly bringing an interpleader action. *Abex Corp. v. Ski's Enterprises, Inc.*, 748 F.2d 513, 516 (9th Cir. 1984); *see also* 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 1719 (3d ed. 2001) ("A federal court has discretion to award costs and counsel fees to the stakeholder in an interpleader action . . . whenever it is fair and equitable to do so."). Such awards are taken from the interpleaded funds. *Michelman*, 685 F.3d at 898; *see also* Wright, Miller, & Kane, *supra*, at § 1719 (stating an award "depletes the fund"). Reasons to reimburse such plaintiffs are that "the plaintiff has benefited the claimants by promoting early litigation on ownership of the fund, thus preventing dissipation, and that the plaintiff should not have to pay attorney fees in order to guard himself against the harassment of multiple litigation." *Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 193 (9th Cir. 1962) (citation omitted).

These reasons for reimbursement apply here. Duckett's petition for interpleader protects against competing claims to the same funds. In light of these equitable considerations, Duckett will be awarded the costs and attorney's fees she reasonably incurred in bringing this interpleader.

This award will come from the interpleaded funds even though the IRS claims a lien on the funds. While "prior federal tax liens give[] the government a statutory priority over the interpleader plaintiff's ability to diminish the fund by an award of fees," *Abex*, 748 F.2d at 516, the IRS' lien does not attach to the funds here because they are in

Duckett's hands, as explained above. Thus, the IRS' lien does not give the government "statutory priority" over Duckett's claim for costs and fees.

Duckett will be ordered to file a motion pursuant to Local Rule LRCiv 54.2 establishing the amount and reasonableness of the requested costs and fees, bearing in mind that such fees are "normally not high." *Michelman*, 685 F.3d at 898; *see also* Wright, Miller, & Kane, *supra*, at § 1719 ("In the usual case the fee will be relatively modest, inasmuch as all that is necessary is the preparation of a petition, the deposit in court or posting of a bond, service on the claimants, and the preparation of an order discharging the stakeholder."). Any fees incurred in advancing one claimant's position against another will be disallowed. Upon the Court's approval of the amount, Duckett will be ordered to withdraw that amount from the interpleaded funds and to transfer the balance of the funds to the Trustee.

### 2. Transfer of Funds

While this action was properly commenced as an interpleader, the interests of all parties are fully protected through the normal remedies of restraining the Trustee, a professional licensed by the Arizona Supreme Court, from disbursing the funds except in accordance with a final judgment as to the rights of the claimants. A trustee is in the business of retaining funds and disbursing them as directed by a court of competent jurisdiction. A trustee needs no relief from the duties of his ordinary business, and the claimants need no protection beyond that. In the circumstances of this case it is needlessly complex for the Court to take the funds and take on the burdens of trust handling and administration. The usual duty of directing or approving the trustee's distribution is all that is needed of a court. Were it otherwise, trustees could routinely shed their duties of administration by washing their hands of the corpus and the claimants.

The funds need not be deposited with the Court as a jurisdictional matter because subject-matter jurisdiction does not depend on 28 U.S.C. § 1335. Rather, as stated above,

- 11 -

this interpleader is proper pursuant to Federal Rule of Civil Procedure 22 and the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1444.  *See Gelfgren v. Republic Nat. Life Ins. Co.*, 680 F.2d 79, 82 (9th Cir. 1982) (distinguishing between interpleader under 28 U.S.C. § 1335 and interpleader under Rule 22).

The IRS opposes transfer to the trustee pending conclusion of the tax lien dispute but offers no reason.  (*See* Doc. 68.)  This course of action could not unfairly prejudice the IRS, as the trustee may not prematurely distribute any of the funds.  The Court may then adjudicate who has a superior right to the funds in the hands of the Trustee and direct the Trustee accordingly.

Therefore, once Duckett withdraws her fee award from the interpleaded funds, she will be ordered to transfer the remaining funds to the Trustee, Tittelbach.  The funds currently total $177,525.  (Doc. 65 at 12; *accord* Doc. 49 at 2.)  Tittelbach and all successive trustees will be ordered to hold the entirety of the transferred funds until the Court orders a final distribution as between the two claimants.  The IRS may decide for itself whether to issue a Notice of Levy on Tittelbach after the transfer.

### 3. Discharge from Liability

"When the court decides that interpleader is available, it may issue an order discharging the stakeholder, if the stakeholder is disinterested . . . ."  Wright, Miller, & Kane, *supra*, at § 1714 (footnotes omitted).  Here, Duckett is a disinterested stakeholder who seeks to be rid of the interpleaded funds.  No one objects to Duckett's discharge *per se*.  (*See* Doc. 67 at 4; Doc. 68 at 1.)  Therefore, after Duckett withdraws her fee award from the interpleaded funds and transfers the remaining funds to the trustee, she will be discharged from this action free of liability to Defendants for or in connection with the interpleaded funds.

## C. Trustee's Motion for Legal Fees

The Trustee also requests an award of legal fees to date from the interpleaded funds.  A trustee "shall take reasonable steps to . . . defend claims against the trust,"

A.R.S. § 14-10811, and "is entitled to reimbursement from the trust" for fees incurred in a good faith defense in a proceeding "involving the administration of the trust," A.R.S. § 14-11004. Tittelbach argues these statutes entitle him to reimbursement for fees spent responding to the IRS' claims in this interpleader action.

The Trustee's motion is premature, as the Trustee's services are not yet concluded and the validity and the time of validity of the IRS's lien must first be adjudicated to know whether any funds may be distributed to the Trustee over the IRS.

This argument, much like the IRS' summary judgment motion, also overlooks the fact that the Trustee does not yet have the interpleaded funds. The parties give scant discussion and less authority on what effect entitlement to "reimbursement from the trust" has when the trust is empty. Nor have the parties addressed adequately whether the Trustee can be reimbursed out of the trust funds for carrying water for the Beneficiary when the Beneficiary is a party and can carry his own water. Therefore Tittelbach's motion will be denied, without prejudice to renewal at the conclusion of this case.

IT IS THEREFORE ORDERED that the United States' Motion for Summary Judgment (Doc. 48) and the Trustee and Trust Beneficiary's Cross-Motion for Summary Judgment (Doc. 58) are denied. Defendants may renew their motions without a need for further briefing once the funds have been transferred to the Trustee as described below.

IT IS FURTHER ORDERED that the Trustee's Motion to Allow Payment of Trust Legal Fees from Interpleader Funds (Doc. 51) is denied without prejudice to renewal at the conclusion of this case.

IT IS FURTHER ORDERED that Plaintiff is awarded the costs and attorney's fees reasonably incurred in bringing this interpleader. Plaintiff shall file no later than November 27, 2015, a motion pursuant to Local Rule LRCiv 54.2 for attorney's fees and costs.

Upon quantification of Plaintiff's attorney's fees and costs, a further order will be entered authorizing Plaintiff to retain for herself those amounts from the interpleaded funds and directing payment of the balance of the interpleaded funds to the Trustee, to be held in their entirety until the Court orders otherwise.  Upon transfer of those funds, Plaintiff's Motion for Discharge (Doc. 65) will be granted by separate order to the extent that Plaintiff will be discharged from this action free of liability to Defendants for or in connection with the interpleaded funds and shall be dismissed from further participation in these proceedings.

Dated this 13th day of November, 2015.

Neil V. Wake
United States District Judge