**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nancy K. Duckett,<br><br>    Plaintiff,<br><br>v.<br><br>Dennis M. Enomoto, et al.,<br><br>    Defendants. | No. CV-14-01771-PHX-NVW<br><br>**ORDER** |

At issue is whether the federal tax lien, 26 U.S.C. § 6321, attaches to money held in a discretionary support trust created under Arizona law for the benefit of the delinquent taxpayer. Before the Court are the taxpayer's and the IRS' competing motions for summary judgment. (Docs. 89, 91.) For the reasons that follow, the IRS' motion will be granted in part and denied in part, and the taxpayer's motion will be denied.

**I. BACKGROUND**

The following facts are stipulated for present purposes or otherwise undisputed.

In 2004, Miyoko Enomoto ("Ms. Enomoto") executed a will in Pima County, Arizona. The will divided certain of Ms. Enomoto's personal property and the residue of her estate into three shares, to be devised to her three children: Dr. Dennis Enomoto ("Dr.

Enomoto"), Nancy Duckett, and Joanne Bradley. The will called for Dr. Enomoto, but not Duckett or Bradley, to receive his share via trust:

> The One-Third share of my Estate, other than tangible personal property, that is to be distributed to my son DENNIS MASAKI ENOMOTO, if such amount should exceed $50,000, shall be distributed in trust. The Trustee shall pay to DENNIS MASAKI ENOMOTO so much or all of the net income and principal of the trust as in the sole discretion of the Trustee may be required for support in the beneficiary's accustomed manner of living, for medical, dental, hospital, and nursing expenses, or for reasonable expenses of education, including study at college and graduate levels. Any income not so paid shall be accumulated and added to the principal of such trust at the end of the trust's tax year. In the Trustee's sole discretion and to the extent the Trustee deems advisable, the Trustee may consider or disregard the funds available to the beneficiary from other sources or the duty of anyone to support the beneficiary. Should the principal of the trust drop below $10,000, the Trustee shall distribute the balance of the principal, together with the undistributed income therefrom to DENNIS MASAKI ENOMOTO.

Under the terms of the will, Carol Severyn Trust Management Services was named as trustee, but Dr. Enomoto enjoyed "the limited authority to request the removal of the Trustee and appoint a successor Trustee." Any successor trustee would have to be an Arizona licensed private fiduciary and could not be a member of Dr. Enomoto's family. The will named Duckett as the personal representative of the estate.

According to the Internal Revenue Service ("IRS"), Dr. Enomoto failed to meet his tax obligations in tax years 2007 through 2011. The IRS made assessments totaling $701,079.11 and sent Dr. Enomoto statutory notices and demand for payment. Dr. Enomoto did not timely pay the full amounts demanded but has made substantial payments since then.

Ms. Enomoto passed away in February 2013, and Duckett filed a probate petition in state court the following month. In April 2014, Duckett prepared a final accounting of the estate, to which both Dr. Enomoto and Bradley agreed. That accounting provided, in

relevant part, that the estate would deliver $173,545.12 to the trustee of the trust created for Dr. Enomoto's benefit.

In June 2014, the IRS served on Duckett, in her capacity as personal representative, a Notice of Levy demanding that she turn over any of Dr. Enomoto's "property and rights to property" in her possession pursuant to a federal tax lien. When Duckett informed Dr. Enomoto of the levy, he objected to paying the IRS the funds slated for delivery into the trust. Duckett then filed an interpleader action in state court against Dr. Enomoto, the IRS, Carol Severyn, and Carol Severyn Trust Management Services. In August 2014, the IRS removed the action to this Court pursuant to 28 U.S.C. § 1444.

After removal, Dr. Enomoto appointed Kurt Tittelbach, an Arizona licensed private fiduciary, as the trust's successor trustee. The Court then dismissed Severyn and Carol Severyn Trust Management Services, and Tittelbach intervened in his capacity as successor trustee. According to the IRS, Dr. Enomoto still owed a balance of $499,761 as of May 18, 2015.

The IRS initially moved for summary judgment directing that the interpleaded funds be given to the IRS. Dr. Enomoto and Tittlebach filed a cross-motion for summary judgment precluding IRS entitlement to the trust. The Court denied both motions because the funds were still being held by Duckett and were not yet held in trust. Accordingly, the Court ordered Duckett to transfer the funds (minus her attorney fees) to Tittelbach and then dismissed her.

Now that the funds are held in trust, the parties have renewed their summary judgment motions. The disputed legal issue is whether the federal tax lien on Dr. Enomoto's "property" or "rights to property" attaches to the trust funds.

## II. LEGAL STANDARD

A motion for summary judgment tests whether the opposing party has sufficient evidence to merit a trial. At its core is whether sufficient evidence exists from which a

reasonable jury could find in favor of the party opposing the motion. Summary judgment should be granted if the evidence reveals no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). For purposes of the pending motions, there are no disputed facts. This case therefore presents a pure question of law.

## III. ANALYSIS

To satisfy a tax deficiency, the federal government may impose a lien on any "property" or "rights to property" belonging to the taxpayer:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. This statutory language "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer may have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719-20 (1985). "Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." *Glass City Bank v. United States*, 326 U.S. 265, 267 (1945).

The parties dispute whether the funds held in Ms. Enomoto's testamentary trust constitute Dr. Enomoto's "property" or "rights to property" for purposes of the federal tax lien. Answering this question requires a two-step analysis. The Court must "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Drye v. United States*, 528 U.S. 49, 58 (1999).

### A. Dr. Enomoto's rights in the trust funds under Arizona law

Determination of Dr. Enomoto's rights in the trust funds begins with the Arizona Trust Code. A.R.S. §§ 14-10101 to 14-11102. The Code sets default and mandatory

- 4 -

rules governing trusts created under Arizona law. A.R.S. §§ 14-10105, 14-10107. On matters where the Code is silent, the common law of trusts governs. A.R.S. § 14-10106(A). On certain topics, the Code instructs courts to look to the Second Restatement of Trusts for interpretation of the common law. A.R.S. § 14-10106(B). When interpreting a trust, the overriding goal is to ascertain the intent of the settlor. *Weinstein v. Weinstein*, 235 Ariz. 40, 44, 326 P.3d 307, 311 (Ct. App. 2014).

Under the Code, a beneficiary may recover damages against a trustee who violates a duty owed to him. A.R.S. §§ 14-11001(A), 14-11002(A). Thus, if a trustee pays a beneficiary less trust money than is owed, the beneficiary may recover the difference. *See* A.R.S. § 14-11002(A)(1). Similarly, courts may remedy a trustee's breach of duty by compelling the trustee to pay money. A.R.S. § 14-11001(B)(3). In this framework, a beneficiary's right to trust funds depends on the trustee's duty to pay the funds, which itself depends on the terms of the trust. This principle is easily stated but not so easily applied. Three examples illustrate the difficulty.[1]

Start with a simple case. Suppose a trust directs the trustee to pay the beneficiary $1,000 from the trust funds each year. Under these terms, the trustee's duty to pay is clearly defined, and a violation would be obvious. Were the trustee to pay only $800 one year, the beneficiary could recover the remaining $200. The beneficiary's right to the trust funds would be a *right to specific payments at specific times*.

Now consider a harder case. Suppose a trust directs the trustee to pay the beneficiary "so much or all of the income and principal of the trust as may be required for support in the beneficiary's accustomed manner of living." Traditionally, this sort of trust was known as a "support trust." *See* Restatement (Second) of Trusts § 154 (Am. Law Inst. 1959). The Arizona Trust Code refers to it as a "discretionary trust" in which

---

[1] For a more thorough discussion of beneficiary rights in trust assets for purposes of the federal tax lien, see 4 William D. Elliott, *Federal Tax Collections, Liens & Levies* ¶ 9.09[3][j] (2016 update) and sources cited therein.

the trustee's discretion is "limited by an ascertainable standard." *See* A.R.S. § 14-10504(E). Whatever the label, the trustee's duty to pay is somewhat fuzzy because the trust does not specify payment amounts or schedules. But the duty is not empty, since the trustee must pay whatever amount is in fact required under the standard set forth in the trust. *See* Restatement (Second) of Trusts § 154 cmt. d. Thus, if the beneficiary is "accustomed" to a $50,000-per-year lifestyle and has no income, a trustee who pays only $40,000 per year could be liable for the remaining $10,000. *See* A.R.S. § 14-10504(C) (recognizing beneficiary's right to "maintain a judicial proceeding against a trustee for . . . failure to comply with a standard for distribution"). The beneficiary's right to the trust funds would be a *right to payments in accordance with an ascertainable standard*.

Now consider an extreme case. Suppose a trust permits the trustee to pay the beneficiary "any amount, including zero, of the income or principal of the trust as the trustee in his sole discretion shall determine." Traditionally, this sort of trust was known as a "discretionary trust." *See* Restatement (Second) of Trusts § 155. The Arizona Trust Code refers to it as a "purely discretionary" trust. *See* A.R.S. § 14-10504(E). Whatever the label, the trustee's duty to pay is tenuous because "the trustee may in his absolute discretion refuse to make any payment to the beneficiary." Restatement (Second) of Trusts § 155 cmt. c. But the trustee is not absolved of all duty. Trustees must always act in good faith. A.R.S. § 14-10105(B)(2); *In re Wills' Trust Estate*, 8 Ariz. App. 591, 595, 448 P.2d 435, 439 (Ct. App. 1968). No trust language, however strong, can entirely remove a power held in trust from judicial review; otherwise "the power would not be held in trust at all." *Stix v. Commissioner*, 152 F.2d 562, 563 (2d Cir. 1945) (Learned Hand, J.). Thus, no matter how broad a trustee's discretion, he may not abuse it. *See* A.R.S. § 14-10504(C) (recognizing beneficiary's right to "maintain a judicial proceeding against a trustee for an abuse of discretion"). An Arizona court reviewing a trustee's exercise of discretion would treat the decision with deference and would consider several factors, including the trust's terms and purposes and the trustee's motives. *In re Esther*

*Caplan Trust*, 228 Ariz. 182, 186-87 ¶¶ 17-21, 265 P.3d 364, 368-69 (Ct. App. 2011). The beneficiary's right to the trust funds would be a *right to payments the withholding of which would constitute an abuse of discretion.*

These examples represent points on a spectrum of the possible extent of a beneficiary's rights to trust assets under Arizona law. On this spectrum, Dr. Enomoto's rights fall somewhere between the second and third examples because Ms. Enomoto's testamentary trust has elements of a traditional support trust and a traditional discretionary trust.

On one hand, the trust is clearly intended for Dr. Enomoto's support. The trust identifies funds that "shall be distributed" to Dr. Enomoto:

> The One-Third share of my Estate, other than tangible personal property, that is to be distributed to my son DENNIS MASAKI ENOMOTO, if such amount should exceed $50,000, shall be distributed in trust.

The trust then sets an ascertainable standard for payment:

> The Trustee shall pay to DENNIS MASAKI ENOMOTO so much or all of the net income and principal of the trust as in the sole discretion of the Trustee may be required for support in the beneficiary's accustomed manner of living, for medical, dental, hospital, and nursing expenses, or for reasonable expenses of education, including study at college and graduate levels.

Such payments are mandatory, since the trustee "shall pay" this amount and the trust identifies no other beneficiary.

On the other hand, the trust leaves to "the sole discretion of the Trustee" the specific determination of how much payment is required under the articulated standard. In making this determination, the trustee may consider or disregard other potential sources of income:

> In the Trustee's sole discretion and to the extent the Trustee deems advisable, the Trustee may consider or disregard the funds available to the beneficiary from other sources or the duty of anyone to support the beneficiary.

Once the trust principal falls below $10,000, however, the trustee has no discretion and must distribute the remaining funds:

> Should the principal of the trust drop below $10,000, the Trustee shall distribute the balance of the principal, together with the undistributed income therefrom to DENNIS MASAKI ENOMOTO.

Trusts of this nature—directing payment under a general standard while leaving specific calculations to the trustee—are sometimes referred to as "discretionary support" trusts or "hybrid" trusts. *See* Evelyn Ginsberg Abravanel, *Discretionary Support Trusts*, 68 Iowa L. Rev. 273, 277-80 (1983). As with traditional support trusts, the trustee must pay Dr. Enomoto in accordance with an ascertainable standard. But as with traditional discretionary trusts, the trustee's determination of exactly how much payment is required is reviewable only for abuse of discretion. The result is essentially a traditional support trust, but with deferential judicial review. That is, a trustee applying the payment standard in Ms. Enomoto's testamentary trust has more leeway than a trustee applying the equivalent standard in a traditional support trust. *See id.* at 290. Thus, Dr. Enomoto's right to the trust funds is a *right to payments the withholding of which would constitute an abuse of discretion in applying an ascertainable standard*.

Dr. Enomoto tries to bypass all this complexity with a simple argument:

> (1) Under the Arizona Trust Code, the trust here is a "discretionary trust."
>
> (2) According to cases in other jurisdictions, the federal tax lien does not attach to "discretionary trusts."
>
> (3) Therefore the federal tax lien does not attach to the trust here.

But this argument rests on an equivocation. The Arizona Trust Code uses the term "discretionary trust" broadly, in a way that includes traditional support trusts. *Compare* A.R.S. § 14-10504(A)(1) *with* Restatement (Second) of Trusts § 154. The cases cited by Dr. Enomoto, however, use the term narrowly, in explicit contrast with traditional support

- 8 -

trusts. *See, e.g.*, *First of America Trust Co. v. United States*, No. 91-2352, 1993 WL 327684, at *2-3 (C.D. Ill. Mar. 15, 1993). Thus, Dr. Enomoto's argument fails because it relies on conflicting meanings of a word at the same time.

The confusion is understandable because the term "discretionary trust" only recently acquired a dual meaning. The Second Restatement of Trusts distinguishes "discretionary trusts" from "support trusts." Restatement (Second) of Trusts §§ 154, 155. But the Third Restatement abandons the term "support trust" and instead uses the term "discretionary trust with a support standard" to describe the same concept. Restatement (Third) of Trusts § 60, rptr's note to cmt. a (Am. Law Inst. 2003). The Uniform Trust Code follows the Third Restatement, categorizing as a type of "discretionary trust" what was traditionally known as a support trust. *See* Unif. Trust Code § 504 & cmt. (Unif. Law Comm'n 2000, amended 2010). The Arizona Trust Code follows suit. *See* A.R.S. § 14-10504.[2] Importantly, this change in terminology does not affect the beneficiary's underlying right to compel payment. *See* Unif. Trust Code § 504 cmt. It is the nature of this right that is relevant here.

**B. Whether Dr. Enomoto's rights in the trust funds qualify as "property" or "rights to property" for purposes of the federal tax lien**

"The question whether a state-law right constitutes 'property' or 'rights to property' is a matter of federal law." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 727 (1985). The statute itself provides little guidance on the matter. It merely imposes a lien on "all property and rights to property, whether real or personal, belonging to" the delinquent taxpayer. 26 U.S.C. § 6321. It does not define the terms "property" or "rights to property."

---

[2] The Arizona Code heightens confusion because, unlike the Uniform Code, it instructs courts to use the Second Restatement and *not* the Third Restatement as a source of common law in determining rights of a beneficiary's creditors and a settlor's intent. *Compare* Unif. Trust Code § 106 *with* A.R.S. § 14-10106(B).

This imprecision is intentional. Congress "knew that the forms and varieties of property would remain in flux, and that a definition capable of precisely capturing those valuable interests for the tax gatherers' harvest would elude it." *Randall v. H. Nakashima & Co.*, 542 F.2d 270, 278 (5th Cir. 1976). By not "enumerating attributes or varieties of property rights," Congress gave the statutory language "expansiveness" and "flexibility." *Id.* at 279.

But with flexibility comes unpredictability. With Congress having kicked the can down the road, courts across the country are tasked with applying broad statutory language in a wide variety of situations, without the benefit of bright lines or clear tests.

The Supreme Court has provided some limited direction. "In determining whether a federal taxpayer's state-law rights constitute 'property' or 'rights to property,' '[t]he important consideration is the breadth of the control the [taxpayer] could exercise over the property." *Drye v. United States*, 528 U.S. 49, 61 (1999) (quoting *Morgan v. Comm'r of Internal Revenue*, 309 U.S. 78, 83 (1940)) (alterations in original). Applying this metric, the Supreme Court has held that "a taxpayer's right under state law to withdraw the whole of the proceeds from a joint bank account constitutes 'property' or the 'right to property' subject to levy for unpaid federal taxes, although state law would not allow ordinary creditors similarly to deplete the account." *Id.* at 58 (citing *Nat'l Bank of Commerce*, 472 U.S. at 723-27). Similarly, "a taxpayer's right under a life insurance policy to compel his insurer to pay him the cash surrender value qualifies as 'property' or a 'right to property' subject to attachment for unpaid federal taxes, although state law shielded the cash surrender value from creditors' liens." *Id.* (citing *United States v. Bess*, 357 U.S. 51, 56-57 (1958)). By contrast, "no federal tax lien could attach" to the proceeds of a life insurance policy, since those proceeds were "unavailable to the insured in his lifetime." *Id.* at 58-59 (citing *Bess*, 357 U.S. at 55-56).

Here, the question is whether a beneficiary has enough "control" over funds held in a discretionary support trust to trigger federal tax lien attachment. Neither the

- 10 -

Supreme Court nor the Ninth Circuit Court of Appeals has addressed this question. Other courts have, with mixed results. It is difficult to harmonize these results in a principled way. Courts appear to be deciding the question *ad hoc*, based on the unique combination of circumstances before them. In this judicial landscape, the best a court can do is identify the factors most relevant to its decision and explain how those factors compare or contrast with similar cases.

### 1. Cases in which the federal tax lien did not attach

Dr. Enomoto cites four cases in support of his position that the tax lien does not attach to the trust funds. One has nothing to do with taxes or federal law. *Myers v. Kansas Dep't of Soc. & Rehab. Servs.*, 254 Kan. 467 (1994).[3] The other three are also unpersuasive.

In *First of America Trust Co. v. United States*, No. 91-2352, 1993 WL 327684 (C.D. Ill. Mar. 15, 1993), the delinquent taxpayer was one of several beneficiaries of a trust containing both "support" language and "discretionary" language:

> [T]he Trustee shall pay or apply the net income and so much of the principal as the Trustee may in its sole discretion deem necessary or appropriate for the support, comfort and welfare of such of [the beneficiaries] as shall be living from time to time, . . . the Trustee having full power and authority from time to time to fix and change the amounts to be so received by them, respectively.

*Id.* at *3 (second and third alterations in original). The court determined that the beneficiary could not "compel payment" from the trust principal under Maryland law and therefore had no "property interest" in the trust principal for purposes of the federal tax

---

[3] Dr. Enomoto cites *Myers* as an instance where a trust similar to Ms. Enomoto's testamentary trust was deemed "discretionary" under state law. 254 Kan. at 477. The court concluded the beneficiary could not "compel the trustee to pay" any trust funds. *Id.* But here, Dr. Enomoto *can* compel the trustee to pay trust funds in some circumstances, as explained above. Moreover, the trust in *Myers* did not place the word "shall" next to the word "pay," a fact the court relied on in concluding the trust was discretionary. *See id.* Ms. Enomoto's trust, in contrast, directs that the trustee "shall pay" Dr. Enomoto.

- 11 -

lien. *Id.* at *4-5.  This determination is unpersuasive here because under Arizona law Dr. Enomoto *can* compel the trustee to pay trust funds in some circumstances, as explained in Part III.A.  Moreover, *First of America Trust* is factually distinguishable because there, (1) the trustee had not invaded the trust principal in the eighteen years since the trust was created, suggesting no beneficiary had a property interest in the principal, and (2) the trust had been created for multiple beneficiaries, which means (though not stated by the court) that any single beneficiary's right to invade the trust principal would reduce the trust income available to the others.  *See id.* at *3.

*In re Wilson*, 140 B.R. 400 (N.D. Tex. 1992) is inapplicable here because the trust there gave the trustee discretion as to whether to pay at all, not just as to how much payment was required under an ascertainable standard:

> *My Trustee, in its sole discretion, may distribute* sixty (60%) of the income to or for the benefit of my daughter, NANCY LOU WILSON; provided however, any part or all of such income that is not distributed shall be accumulated for the benefit of my daughter, NANCY LOU WILSON, and *my Trustee shall have the sole discretion to distribute* all or any part of such accumulated income to or for the benefit of my daughter at such time or times as my Trustee determines to be in the best interest of my daughter.

*Id.* at 402 (emphasis added).  Moreover, unlike here, the trust specified where the funds would go upon the beneficiary's death:

> Any income and/or accumulated income not distributed at the date of my daughter's death shall be distributed to her descendants.

*Id.*  According to the court, that was a "clear statement that the Trustee is not obligated to distribute anything to the [beneficiary] during her lifetime."  *Id.* at 406-07.

*Texas Commerce Bank National Ass'n v. United States*, 908 F. Supp. 453 (S.D. Tex. 1995) is least persuasive of all because the opinion contains no complete quotation of the relevant trust language, making a thorough evaluation of the court's reasoning impossible.  Thus, none of the cases cited by Dr. Enomoto preclude federal tax lien attachment to his right to the trust funds.

### 2. Cases in which the federal tax lien attached

The IRS relies principally on *United States v. Delano*, 182 F. Supp. 2d 1020 (D. Colo. 2001), an opinion with sound reasoning but limited applicability. There the delinquent taxpayer, James Delano, was the sole beneficiary of a trust containing language substantially similar to Ms. Enomoto's testamentary trust:

> During my son's lifetime, my trustee shall pay to or apply for the benefit of my son so much of the income or principal, or both, as my trustee in its sole and absolute discretion shall deem necessary or advisable for his maintenance, health, education, comfort and welfare. My trustee may, but need not, consider all funds known to my trustee to be available to him. Any undistributed income may be added to principal from time to time in the discretion of my trustee.

*Id.* at 1022. The court held that this trust did not give the trustee "discretion to refuse all payments" to Delano and therefore Delano's interest in the trust constituted "a property interest to which a federal tax lien may attach." *Id.* at 1023-25. In reaching this conclusion the court noted two trust characteristics that are also present here. First, the taxpayer was the trust's sole beneficiary. *Id.* at 1023. Second, the word "shall" preceded the word "pay" whereas the word "discretion" followed words referring to amount of payment, indicating the trustee's discretion governed only how much to pay, not whether to pay. *See id.* at 1023. So too here:

> The Trustee shall pay to DENNIS MASAKI ENOMOTO so much or all of the net income and principal of the trust as in the sole discretion of the Trustee may be required . . . .

These characteristics suggest the settlor in both cases intended the beneficiary to be paid, thus giving the beneficiary some control over the trust funds. Two additional features of Ms. Enomoto's trust support that inference here: the trust states that the funds "shall be distributed" to Dr. Enomoto and that once the principal falls below $10,000, the trustee loses all discretion and must pay Dr. Enomoto the remaining funds:

> The One-Third share of my Estate, other than tangible personal property, that is to be distributed to my son DENNIS MASAKI ENOMOTO, if such amount should exceed $50,000, shall be distributed in trust.

- 13 -

> . . .
>
> Should the principal of the trust drop below $10,000, the Trustee shall distribute the balance of the principal, together with the undistributed income therefrom to DENNIS MASAKI ENOMOTO.

In some respects, however, Delano had greater control over the trust funds there than Dr. Enomoto does here, because Delano had the option to terminate the trust and retain all trust assets and because he and his son were the trustees. *Id.* at 1021-23. Thus, the argument for federal tax lien attachment is weaker here than in *Delano*.

A closer analogue is *United States v. Taylor*, 254 F. Supp. 752, 755 (N.D. Cal. 1966). There the delinquent taxpayer, Lee Jones, Jr., was the sole beneficiary of a discretionary support trust that provided in relevant part:

> The trustees shall pay to or apply for the benefit of my son, LEE JONES, JR., so much of the net income of said trust, up to the whole thereof, as the Trustees may from time to time deem necessary or advisable for his proper care, maintenance and support. The balance of said net income, if any, shall be accumulated by the Trustees, and from time to time added to the principal of the trust estate.

*Id.* at 755 n.1. The court determined that this trust gave Jones the "basic beneficial right to receive payments from income to the extent needed for his support" and that federal tax liens "attached to and subsist against that right." *Id.* at 756. In reaching this conclusion the court noted that the trust, like Ms. Enomoto's trust, stated the trustees "shall pay" the beneficiary and gave the trustees discretion only as to the amount of payment necessary under the trust standard. *Id.* at 755. The court also noted that under California law, were the trustees to exercise their discretion unreasonably, Jones could compel them to act otherwise. *Id.* Dr. Enomoto has a similar right under Arizona law. The most significant difference between *Taylor* and this case seems to be that in *Taylor* the trustees paid Jones weekly for several months before the government sued them, *id.* at 754, whereas here the trustee has not paid Dr. Enomoto anything. Still, Dr. Enomoto's control over the trust funds here is comparable to Jones' control over the trust funds

- 14 -

there. Therefore *Taylor*'s conclusion as to tax lien attachment is persuasive and applicable here. The federal tax lien attaches to Dr. Enomoto's right to the trust funds.

This conclusion is in accord with other courts that have followed *Taylor*, *see, e.g.*, *Delano*, 182 F. Supp. 2d at 1023; *Magavern v. United States*, 415 F. Supp. 217, 221 (W.D.N.Y. 1976), *aff'd*, 550 F.2d 797 (2d Cir. 1977); *United States v. Harris*, No. 95-CR-00227-TEH-1, 2016 WL 524852, at *3 (N.D. Cal. Feb. 10, 2016), as well as at least one restatement of the law, *see* Restatement (Second) of Trusts § 157(d) (United States may pierce support trust to satisfy claim against beneficiary).

### 3. Enforcement of the lien

If the IRS were seeking only a judgment that the federal tax lien attaches to Dr. Enomoto's right to the trust funds, no further discussion would be necessary. But the IRS' motion also seeks to transfer the entirety of the trust funds to the United States. That is a step too far.

Dr. Enomoto's right to the trust funds is, as explained in Part III.A, a right to payments the withholding of which would constitute an abuse of discretion in applying an ascertainable standard. While that right affords him enough control over the trust funds to trigger federal tax lien attachment, it does not by itself justify enforcement of the lien as to any specific amount. As explained in *Taylor*, the right differs from other property rights in that "it has no permanently fixed dollar value" and "is variable according to the taxpayer's needs." 254 F. Supp. at 756. While the right can be "assigned a reasonably accurate dollar value by assessing the taxpayer's current needs and living demands," *id.*, the IRS has provided no evidence of Dr. Enomoto's needs or demands and therefore no reason to think the lien extends to all the trust funds. In other words, the IRS has a valid lien but has not resolved "the practical problems of enforcing the lien." *Id.*

*Delano* is of little help. There, the court noted the problem—that Delano's right to the trust had "no permanently fixed dollar value"—but determined that his right extended

- 15 -

to all the trust assets because (1) the trust named him as the sole beneficiary, (2) the trust would terminate upon his death, and (3) the trust permitted him to terminate the trust and retain all assets without regard to the remainder beneficiaries. 182 F. Supp. 2d at 1023-24. Here, in contrast, although Dr. Enomoto is the trust's sole beneficiary, the parties have not adequately briefed the trust consequences of his death[4] and the trust does not permit him to unilaterally terminate the trust and retain all assets. Therefore it is less clear whether Dr. Enomoto's right extends to all the trust funds.

For this reason, the IRS' summary judgment motion will be (1) granted to the extent it seeks a judgment that the federal tax lien attaches to Dr. Enomoto's right to the trust funds but (2) denied without prejudice to the extent it seeks a transfer of those funds to the United States. More evidence would be necessary to justify the latter conclusion. *See Taylor*, 254 F. Supp. at 758 (allowing "additional hearings or proceedings" to effectuate foreclosure of federal tax lien); *accord Magavern*, 415 F. Supp. at 221 (holding federal tax levy valid but stating "determination of the actual amount of trust income and/or principal reached by the levy must await trial").

Admittedly, this outcome is somewhat unsatisfactory. Both parties have advanced simpler, more practicable positions: the IRS says it is entitled to all the trust funds, and Dr. Enomoto says it is not entitled to any. But both of these positions oversimplify the facts and the law. In reality, Dr. Enomoto's right to the trust funds gives him enough control to trigger tax lien attachment, but it is too circumstance-dependent to allow enforcement of the lien as to any specific amount on the current record.

---

[4] The only relevant assertion from either party is a sentence in Dr. Enomoto's Reply brief: "Pursuant to A.R.S. § 14-2604(A), at Dr. Enomoto's decease, the remaining Trust assets would pour back into the residuary under the Will, to be distributed to the other two beneficiaries (Dr. Enomoto's sisters)." (Doc. 74 at 4.) The sentence is not followed by any citation to authority.

IT IS THEREFORE ORDERED that the IRS' Renewed Motion for Summary Judgment (Doc. 91) is (1) granted to the extent it seeks a judgment that the federal tax lien attaches to Dr. Enomoto's right to the funds held in Ms. Enomoto's testamentary trust created for his benefit, (2) denied without prejudice to the extent it seeks a transfer of those funds to the United States, and (3) otherwise denied.

IT IS FURTHER ORDERED that Dr. Enomoto and Tittelbach's Renewed Motion for Summary Judgment (Doc. 89) is denied.

Dated this 18th day of April, 2016.

Neil V. Wake
United States District Judge